PEOPLE v CAMPBELL

Docket No. 90923. Submitted June 17, 1987, at Grand Rapids. Decided December 8, 1987.

William Billy Campbell was convicted of bank robbery and unarmed robbery following a jury trial in Berrien Circuit Court, Julian E. Hughes, J. Defendant subsequently pled guilty to being an habitual offender, second offense, as to the bank robbery conviction and to being an habitual offender, third offense, as to the unarmed robbery conviction. Defendant was sentenced to from ten to fifty years imprisonment for the supplemented bank robbery conviction and ten to thirty years imprisonment for the supplemented unarmed robbery conviction. Defendant appealed.

The Court of Appeals *held:*

1. The aspect of the bank robbery statute involving assaultive conduct and the armed and unarmed robbery statutes were all intended by the Legislature to prohibit conduct violative of the same societal norm, i.e., the protection of persons from having property taken from them or taken in their presence by force or threat of force. The prohibited conduct is the threatening or injuring of another in order to take money, not the actual stealing. Defendant's convictions for bank robbery and unarmed robbery are violative of the double jeopardy clause's protection against multiple punishment because he has been convicted under two separate statutes for a single offense. Defendant's conviction of and sentence for unarmed robbery, being the lesser charge, and his supplemental conviction for habitual offender, third offense, are vacated.

2. Defendant was not denied effective assistance of counsel.

Affirmed in part and vacated in part.

REFERENCES

Am Jur 2d, Criminal Law §§ 243 *et seq.*

Am Jur 2d, Robbery §§ 1, 22 *et seq.*

Limitations under double jeopardy clause of Fifth Amendment upon state criminal prosecutions—Supreme Court cases. 67 L Ed 2d 831

Adequacy of defense counsel's representation of criminal client regarding prior convictions. 14 ALR4th 227.

See also the annotations in the Index to Annotations under Robbery.

W. J. Caprathe, J., concurred but wrote separately to state that he disagreed with the majority's statement that an earlier Court of Appeals case was wrongly decided. At the same time, he concludes that the majority in that earlier case, of which he was part, erroneously concluded that the Legislature intended multiple punishments under both the armed robbery and vault robbery statutes for the same conduct. He now is of the belief that the Legislature did not intend to permit punishment for the same conduct under both the vault robbery and the armed or unarmed robbery statutes.

1. Criminal Law — Double Jeopardy — Multiple Punishment.

The issue whether two convictions at a single trial involve the same offense for purposes of protection against multiple punishment is solely one of legislative intent.

2. Criminal Law — Double Jeopardy — Multiple Punishment.

Statutes prohibiting conduct violative of distinct social norms generally are viewed as separate and amenable to permitting the imposition of multiple punishment; however, where two statutes prohibit violations of the same social norm in a different manner, or where a statute which incorporates most of the elements of a base statute increases the penalty for violation where there is aggravating conduct, it is evidence that the Legislature did not intend punishment to be imposed under both statutes for one transaction.

3. Robbery — Bank Robbery — Armed Robbery — Unarmed Robbery.

The aspect of the bank robbery statute involving assaultive conduct and the armed and unarmed robbery statutes were all intended by the Legislature to prohibit conduct violative of the same societal norm; the prohibited conduct is the threatening or injuring of another in order to take money, not the actual stealing (MCL 750.529, 750.530, 750.531; MSA 28.797, 28.798, 28.799).

4. Robbery — Punishment — Legislative Intent.

The various robbery statutes were not intended to prohibit different phases of conduct, but rather were intended to punish according to the presence or absence of aggravating factors (MCL 750.529; 750.530, 750.531; MSA 28.797, 28.798, 28.799).

5. Criminal Law — Single Offense — Multiple Convictions — Remedies.

The remedy in situations where a defendant has been erroneously convicted under two separate statutes for a single offense

is to affirm the conviction of the higher charge and vacate the conviction on the lower charge.

6. CRIMINAL LAW — TRIAL STRATEGY — ASSISTANCE OF COUNSEL.
   Matters of trial strategy will not support a claim of ineffective assistance of counsel.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Paul L. Maloney,* Prosecuting Attorney, and *David P. LaForge,* Assistant Prosecuting Attorney, for the people.

*Matthew Posner,* for defendant on appeal.

Before: SAWYER, P.J., and MACKENZIE and W. J. CAPRATHE,* JJ.

PER CURIAM. Following a jury trial, defendant was convicted of bank robbery, MCL 750.531; MSA 28.799, and unarmed robbery, MCL 750.530; MSA 28.798. He subsequently pled guilty to habitual offender, second offense, MCL 769.10; MSA 28.1082, with regard to the bank robbery conviction and habitual offender, third offense, MCL 769.11; MSA 28.1083, with regard to the unarmed robbery conviction. Defendant was sentenced to from ten to fifty years imprisonment for bank robbery and ten to thirty years imprisonment for the unarmed robbery conviction. Defendant appeals as of right. We vacate defendant's convictions and sentence for unarmed robbery and habitual offender, third offense, and affirm his convictions and sentence for bank robbery and habitual offender, second offense.

The incident giving rise to the instant case occurred on February 26, 1985, at the Old Kent Bank in Niles. Defendant approached bank teller Christine Holmes, held his arm in a manner that

* Circuit judge, sitting on the Court of Appeals by assignment.

looked as if he had a gun, told the teller not to move, and ordered her to put $20 bills in a bag. He then left the bank. Only one teller was threatened and only the bank's money was taken.

Defendant was charged in a two-count information with unarmed robbery and bank robbery. Count I charged that defendant "did feloniously rob, steal and take from the person of another, to-wit: Chris Holmes, or in her presence, certain property, to wit: money, by force and violence or by assault or putting in fear, but not while being armed with a dangerous weapon." Count II charged that defendant "did, with intent to commit the crime of larceny, put in fear another person, to wit: Chris Holmes, for the purpose of stealing money from a bank, to-wit: Old Kent Bank, West Side Branch." Defendant was convicted as charged.

Defendant contends that his convictions for unarmed robbery and bank robbery are violative of the double jeopardy clause's protection against multiple punishment. Both the United States Supreme Court and our Supreme Court have stated that, in the context of multiple punishment at a single trial, the issue whether two convictions involve the same offense for purposes of protection against multiple punishment is solely one of legislative intent. *Missouri v Hunter,* 459 US 359, 366; 103 S Ct 673; 74 L Ed 2d 535 (1983); *People v Robideau,* 419 Mich 458, 485; 355 NW2d 592 (1984).

Legislative intent may be gleaned from the societal norms addressed by each of the crimes of which the defendant was convicted. See *Robideau, supra* at 487. Statutes prohibiting conduct that is violative of distinct social norms can generally be viewed as separate and amenable to permitting multiple punishments. On the other hand,

[w]here two statutes prohibit violations of the same social norm, albeit in a somewhat different manner, as a general principle it can be concluded that the Legislature did not intend multiple punishments. For example, the crimes of larceny over $100, MCL 750.356; MSA 28.588, and larceny in a building, MCL 750.360; MSA 28.592, although having separate elements, are aimed at conduct too similar to conclude that multiple punishment was intended. [419 Mich 487.]

Legislative intent may also be gleaned from the overall statutory scheme. The statutes may show an intent to create a series of offenses prohibiting different phases of conduct, with separate penalties for each. This structure indicates a legislative intent to create separate offenses, separately punishable. *People v Sturgis,* 427 Mich 392, 407; 397 NW2d 783 (1986). On the other hand, the Legislature may create a hierarchy of offenses, depending upon the presence or absence of certain aggravating factors. This structure is indicative of an intention to permit only a single appropriate offense and conviction. *Id.*

In *People v Witt,* 140 Mich App 365; 364 NW2d 692 (1985), a panel of this Court found a legislative intent to permit punishment under both the bank robbery statute and the armed robbery statute, MCL 750.529; MSA 28.797, because the two statutes addressed protection of different societal norms. The panel found that the bank robbery statute was "apparently aimed at the protection of funds kept in a building, bank, safe, vault or other depository of money, as well as the protection of persons charged with guarding the money and those otherwise in custody of the money." 140 Mich App 365, 370. In contrast, according to the *Witt* Court, the armed robbery statute "is aimed at persons who violate social norms by taking prop-

erty from the presence of another by force or threat of force while armed with a weapon."

We think *Witt* was wrongly decided. We base this conclusion on our belief that the bank robbery statute and the armed and unarmed robbery statutes were all intended by the Legislature to prohibit conduct violative of the same societal norm. Not unlike the *Witt* Court, we understand the unarmed robbery statute to be aimed at protecting persons from having property taken from them or in their presence by force or threat of force. Our disagreement with *Witt* lies in the characterization of the bank robbery statute.

The bank robbery statute encompasses two distinct offenses, namely bank robbery involving assaultive conduct and safecracking. *People v Adams,* 128 Mich App 25, 30; 339 NW2d 687 (1983). We are of the opinion that, to the extent that the bank robbery statute addresses the type of the bank robbery at issue here, i.e., "nonsafecracking" bank robbery, it was intended to protect *people* rather than funds or buildings. The language of the statute makes it clear that the prohibited conduct is the *threatening* or *injuring* of another in order to take money, not the actual stealing. As codified in 1897 CL 11506; 1915 CL 15229; and 1929 CL 16748, the offense was classified as an offense against persons, not a property offense. The compilers described the statute as "punishment for injury or putting in fear any person for the purpose of committing bank robbery," not as a source of protection of funds in a depository. Concededly, the classifications and notations of the compilers of statutes are not binding upon us. Nevertheless, they do document the overall scheme of the robbery statutes, a relevant consideration under *Sturgis* and *Robideau.* The long-standing interpretation of this scheme is that nonsafecracking bank rob-

bery, like other forms of robbery, is an assaultive crime.

*Sturgis* and *Robideau* also suggest that legislative intent may be determined by reviewing the statutes to see if they are serial or hierarchical in structure. We think it clear that the various robbery statutes were not intended to prohibit different phases of conduct, but rather were intended to punish according to the presence or absence of aggravating factors. Unarmed robbery, punishable by fifteen years imprisonment, is defined as a taking of property from another or in his presence by force and violence. The armed robbery statute adds the aggravating element of a weapon and increases the punishment to life imprisonment. Similarly, we are convinced that the bank robbery statute takes into account the aggravating element of the vulnerability of persons in banks or other depositories and accordingly increases the punishment to life imprisonment.

The remedy in situations where a defendant has been erroneously convicted under two separate statutes for a single offense is to affirm the conviction on the higher charge and vacate the conviction on the lower charge. *People v Jankowski,* 408 Mich 79, 96; 289 NW2d 674 (1980). We therefore vacate defendant's conviction and sentence for unarmed robbery. We also vacate his supplemental conviction for habitual offender, third offense.

Defendant also claims that he was denied effective assistance of counsel. *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), reh den 399 Mich 1041 (1977). We disagree. The actions of defense counsel of which defendant complains were matters of trial strategy which will not support a claim of ineffective assistance of counsel. *People v Armstrong,* 100 Mich App 423; 298 NW2d 752 (1980), lv den 412 Mich 865 (1981); *People v Malchi*

*White,* 81 Mich App 226; 265 NW2d 100 (1978). Defense counsel's performance was not below the standard of ordinary training and skill and had no adverse consequences on defendant's chance of acquittal.

Finally, because we vacate defendant's unarmed robbery conviction, we need not address his claim that the trial court erred in sentencing defendant for that offense.

Affirmed in part and vacated in part.

W. J. CAPRATHE, J. *(concurring).* I agree with the majority opinion, except I do not believe that *People v Witt,* 140 Mich App 365; 364 NW2d 692 (1985), was wrongly decided. In *Witt,* the armed robbery and the vault robbery were not established by the same conduct, i.e., there was an attempt to rob an armored car and a separate robbery of the guard's gun. Factually, there was no double jeopardy, and the decision to affirm both convictions was proper.

However, the majority in *Witt,* of which I was a part, went further. We concluded that the Legislature intended multiple punishments under both the armed robbery and vault robbery statutes for the same conduct. After applying that conclusion to the facts in the present case, and for the reasons so aptly set forth by the majority in the present case, I have changed my mind. I now believe that the Legislature did not intend to permit punishment for the same conduct under both the vault robbery and the armed and unarmed robbery statutes.